**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-24264-BLOOM**

DAVID ARTEAGA TORRES,

Petitioner,

v.

WARDEN, in the official capacity as Warden of Miami Federal Detention Center; KELIE WALKER, in her official capacity as Field Office Director of U.S. Immigration and Customs Enforcement Miami Field Office;

Respondents.
_______________________________________/

**ORDER ON PETITION FOR HABEAS CORPUS**

**THIS CAUSE** is before the Court upon David Arteaga Torres' ("Petitioner") Verified Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. §2241, alleging that he has been unlawfully detained in Immigration and Customs Enforcement ("ICE") custody. ECF No. [1]. The Court issued its Order to Show Cause, ECF No. [3], and Respondents filed a Response, ECF No. [4], to which Petitioner filed a Reply, ECF No. [7]. The Court has considered the Petition, the supporting and opposing submissions, the record, the applicable law, and is otherwise fully advised. For the reasons that follow, the Petition is granted.

## I. BACKGROUND

Petitioner is a Cuban national who has resided in the United States since 2011. ECF No. [1] ¶ 11. He entered the United States in October 2011 at Laredo, Texas. *Id.* ¶ 19. On June 24, 2014, Petitioner was convicted for Defraud to Obtain Property Value of 50K and Committing a Staged Motor Vehicle Accident; he was sentenced to five years in state prison. ECF No. [4] at 2.

On August 19, 2014, Immigrations and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") issued a Notice to Appear ("NTA"), charging Petitioner as inadmissible under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), in that he is an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. *Id.* at 3. The NTA also charged Petitioner with being inadmissible pursuant to § 212(a)(6)(A)(i) of the INA as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General, and section 212(a)(7)(A)(i)(I), as an immigrant, who at the time of application for admission, is not in possession of a suitable travel document or document of identity and nationality. *Id*. On October 14, 2015, the Department of Homeland Security withdrew the § 212(a)(6)(A)(i) charge. *Id*.

On October 14, 2015, an immigration judge ordered Petitioner removed, with the order stating that Petitioner should be removed to Cuba. ECF No. [1] ¶¶ 20, 21. After the removal order became final, ICE detained Petitioner. *Id.* ¶ 22. During June and July 2016, ICE served Petitioner with several I-229(a) warnings for failure to depart. *Id.* On June 2, 2016, ICE served Petitioner with a Notice to Alien of File Custody review, which indicated that if ICE did not remove Petitioner within the removal period, his case would be reviewed for consideration of a release on an order of supervision, with release depending on him demonstrating to the satisfaction of the Secretary of Homeland Security that he would not pose a danger to the community or a flight risk. *Id.* ¶ 23.

On August 29, 2016, Petitioner's custody status was reviewed, and ICE issued a Release Notification stating that, upon review of Petitioner's case, ICE has concluded that Petitioner could

be released from custody pending his removal. *Id.* ¶¶ 24, 25. That same day, ICE released Petitioner on an Order of Supervision indicating that Petitioner had been ordered removed on October 14, 2015 but because ICE had not effected his deportation in the time prescribed by law, Petitioner would be placed under supervision with written conditions. *Id.* ¶ 26.

Petitioner then complied with ICE supervision for nearly 10 years, reporting to ICE in 2016, 2019, 2023, 2024, 2025, and 2026. *Id.* ¶ 28. Petitioner now owns a home, owns a business, pays taxes, and has two United States citizen daughters. *Id.* ¶ 29.

On February 11, 2026, Petitioner appeared for his ICE reporting appointment as required. *Id.* ¶ 30. ICE allowed him to leave and gave him a 2027 appointment date. *Id.* ¶ 30. But on February 19, 2026, law enforcement officers or agents of an unknown agency detained Petitioner at his home. *Id.* ¶ 31. After detaining Petitioner, the officers or agents took him to the local jail, then transferred him to ICE custody on February 20, 2026. *Id.* ¶ 33. Petitioner was not given meaningful advance notice that ICE intended to revoke his order of supervision, nor was he given an opportunity to context revocation before his detention. *Id.* ¶ 34.

On February 20, 2026, ICE revoked Petitioner's order of supervision, with the Notice of Revocation of Release stating that ICE determined Petitioner would be kept in custody "based on a review of your file, your personal interview and bedspace availability." *Id.* ¶ 35. The same notice indicated that Petitioner would promptly receive an "informal interview" at which he could respond to the reasons for revocation. *Id.* ¶ 36.

On February 27, 2026, ICE allegedly served Petitioner with a Notice of Removal stating that ICE intended to remove him to Mexico. *Id.* ¶ 37. Petitioner denies receiving such a notice. *Id.* The Notice of Removal did not include any travel document, acceptance document from Mexico,

paperwork authorizing Petitioner's entry into Mexico, or explanation of the legal basis for removing Petitioner to Mexico rather than Cuba. *Id.* ¶ 38.

On March 9, 2026, ICE attempted to remove Petitioner to Mexico. *Id.* ¶ 39. In Petitioner's prior *pro se* habeas case, the Government asserted that Petitioner failed to cooperate with his own removal and, as such, he had no *Zadvydas* claim. *Id.* In support of that assertion, the Government submitted a declaration claiming that officers attempted to execute Petitioner's removal to Mexico and that Petitioner refused to exit the transport bus. *Id.* ¶ 40. The Government's filing in that case did not provide any travel document, acceptance document from Mexico, paperwork authorizing Petitioner's entry into Mexico, or documentation showing Mexico agreed to accept Petitioner. *Id.* ¶ 41. It also did not provide any documentation showing that Petitioner was told he was legally required to enter Mexico. *Id.* ¶ 42. Petitioner states that he did not comply with the attempted removal to Mexico because it did not appear to follow lawful removal procedures. *Id.* ¶ 43.

On June 4, 2026, Petitioner's counsel spoke with him by telephone while Petitioner was detained. *Id.* ¶ 44. Petitioner explained that ICE first transported him by airplane to Louisiana and then by airplane to Texas. *Id.* ¶ 45. After arriving in Texas, Petitioner and other detainees were placed on a bus. *Id.* Officers removed the detainees' restraints and returned their property, and the bus was driven to a location very near the border with Mexico. *Id.* ¶ 46. Once the bus was near the border, the officers turned off their body cameras, then effectively told the detainees that whoever wanted to go could go, and whoever wanted to stay could stay. *Id.* ¶ 47.[1] The officers did not tell the detainees they were legally required to enter Mexico or provide paperwork authorizing or permitting entry into Mexico. *Id.* ¶ 48. The officers then allowed the detainees to exit the bus, at

[1] The Government asserts that ICE officers "issued clear, repeated, and lawful verbal instructions directing all individuals to exit the transport bus in order to proceed with the removal process." ECF No. [4] at 4.

which point four people exited. *Id.* ¶ 49. One person returned, stating that Mexico would not accept him. *Id.* ¶ 49. The bus then returned to the detention facility. *Id.*

On April 17, 2026, Petitioner filed a *pro se* habeas petition. *Id.* ¶ 51. Petitioner was then transferred from facility to facility and did not receive the Government's response or have an opportunity to reply to the argument that he failed to cooperate with removal. *Id.* ¶ 52. The petition was denied without prejudice, as Petitioner's *Zadvydas* claim was premature. *Id.* ¶ 53.

On June 25, 2026, ICE ERO served Petitioner with a Notice of Failure to Comply. ECF No. [4] at 5. Additionally, ICE ERO conducted an informal interview with Petitioner to address the reasons for revocation of his release, but he did not provide any statements. *Id*.

On April 18, 2026, Petitioner filed the instant Petition, asserting four grounds for relief: (1) Unlawful Prolonged Detention under 8 U.S.C. § 1231 and *Zadvydas* (Ground I), (2) in the alternative, Current Detention is Not Reasonably Related to Removal (Ground II), (3) Unlawful Revocation of Order of Supervision (Ground III), and (4) Procedural Due Process Violation (Ground IV). ECF No. [1]. The Government responded, ECF No. [4], and Petitioner replied, ECF No. [7].

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. §2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. §2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. *Zadvydas* Claim (Ground I)

In Ground I, Petitioner argues, in relevant part, that his continued detention is unlawful and contravenes the limits set by the Supreme Court on § 1231(a)(6) detentions. ECF No. [1] ¶¶ 60, 61. The six-month presumptively reasonable period has expired, and Petitioner's removal is not reasonably foreseeable. *Id.*[2] Respondents contend that the Petition is premature as Petitioner has only been detained for 120 days from the revocation of his order of supervision. ECF No. [4] at 5. That Petitioner was previously detained is irrelevant, as current and prior detentions are not aggregated for purposes of a *Zadvydas* claim. *Id.* at 5–6. Petitioner replies that the Petition is not premature for three reasons: (1) Petitioner includes his previous detention in calculating his detention period, (2) this *Zadvydas* Petition uniquely calls for pre-180-day consideration, and (3) the record shows no reasonably foreseeable removal. ECF No. [7] ¶¶ 35–40.

The Eleventh Circuit has held that the six-month period "must have expired at the time [the petitioner's] petition was filed in order to state a claim under *Zadvydas*." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). As of the filing of the Petition, Petitioner had been subjected to 120 days of detention. ECF No. [1] ¶ 55.

Despite Petitioner's argument to the contrary, the Court cannot aggregate multiple separate detentions for purposes of assessing his *Zadvydas* claim. Some Courts do aggregate all periods of detention following an order of removal, even if such detentions are not consecutive. *See Jaranow v. Bondi*, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in *Zadvydas*"); *Patel v. Bondi*, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2

[2] Petitioner argues that "[m]ultiple periods of post-removal-order detention may be aggregated to satisfy the 180-day period recognized in *Zadvydas*." *Id.* ¶ 62.

(D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"). Other courts hold to the contrary, concluding that each detention resets the removal period clock under *Zadvydas*. *See Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE.").

This Court agrees with the reasoning in the latter set of cases. If a Petitioner is released because the presumptively reasonable period of detention has run, Petitioner's logic would mean that Petitioner could never be re-detained for purposes of removal—even for a day—as that would run afoul of *Zadvydas*. That logic cannot be correct. Instead, it must be the case that there is more "flexibility" involved, as that "reflects the kind of balance *Zadvydas* hoped to achieve: preserving the government's authority to effectuate removals while safeguarding the individual's liberty interests against indefinite detention." *Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *3 (S.D. Fla. Feb. 13, 2026). Thus, the Court finds Petitioner's *Zadvydas* claim in Ground I premature and therefore cannot serve as the basis for habeas relief.[3]

---

[3] This also disposes of Ground II. In Ground II, Petitioner argues that even within the presumptively reasonable period, a detention can be unlawful if there is no significant likelihood of lawful removal. ECF No. [1] ¶¶ 70–74. This is inconsistent with the Eleventh Circuit's binding statement that a petitioner "*must show* post-removal order detention in excess of six months" to even begin the substantive *Zadvydas* analysis. *Akinwale*, 287 F.3d at 1052 (emphasis added).

**B. Unlawful Revocation of Order of Supervision (Ground III)**

Petitioner argues that under the *Accardi* doctrine—which requires agencies to follow their own binding regulations—revocation requires notice of the reasons for revocation and a prompt interview to respond. ECF No. [1] ¶¶ 76, 77. Here, the circumstances of Petitioner's re-detention violate that doctrine, in that Respondents did not provide notice of the reasons for revocation or a meaningful opportunity to respond. *Id.* ¶ 80.

Respondents provide evidence that a Notice of Revocation of Release was served on Petitioner on February 20, 2026. ECF No. [4-10]. The Notice explained that his re-detention was based on "a review of [his] file, [his] personal interview and bedspace availability." *Id*. They also provide a sworn Declaration that Petitioner received an informal interview on June 25, 2026 at which he could "address the reasons for revocation," but Petitioner "did not provide any statements." ECF No. [4-4] ¶ 20.

Petitioner replies that no such interview occurred. ECF No. [7] ¶ 3. Instead, on the day in question,

> ICE officers attempted to serve Petitioner with approximately eight to ten pages of English-language documents concerning removal to Mexico, told him in Spanish that he needed to sign the papers so he could go to Mexico, did not read or explain the papers to him in Spanish or English, did not give him the interview Respondents now claim occurred, and stamped the papers "refused to sign" when Petitioner requested counsel and refused to sign documents he could not understand.

*Id*. Respondents offer "no interview notes, no questions asked, no language used, no record of reasons provided, no indication Petitioner was told he could respond to the grounds for revocation, and no signed declaration from a witness with personal knowledge." *Id.* ¶ 27. But even by Respondents' evidence, the "informal interview" occurred more than four months after re-detention. *Id.* Similarly, the Notice of Revocation is deficient, providing insufficient explanation of the reasons for revocation and no evidence that Petitioner was given an opportunity to respond.

*Id.* ¶ 30. It is also not clear that the revocation decision was made by a properly authorized individual. *Id.* ¶ 31.

The basic premise of the *Accardi* doctrine, drawn from *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). Furthermore, it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Thus, the Court begins by discussing the applicable regulations. The Notice of Revocation of Release describes itself as operating under 8 C.F.R. § 241.4. ECF No. [4-10]. The Court finds that this provision is correctly applied, as opposed to § 241.13. As described in the regulation:

> The custody review procedures in this section [§ 241.4] do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4).

Here, where ICE apparently made a subsequent determination on the likelihood of removal, § 241.4 applies. Under § 241.4, there are two broad categories for revocations of release. Section 241.4(l)(1) covers revocation in response to a violation of the conditions of release. For those detained pursuant to § 241.4(l)(1), the regulation requires notification of the "reasons for revocation of his or her release or parole," as well as "an initial informal interview promptly after

his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Section 241.4(l)(2) is broader and includes cases where "[t]he purposes of release have been served," "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2)(i),(ii),(iv). Though § 241.4(l)(2) does not technically contain the same notice and interview requirements, courts have "interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation"—that is, that the notice and informal interview requirement found in § 241.4(1)(1) applies to revocation under § 241.4(1)(2). *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); *Zhu v. Genalo*, 798 F.Supp.3d 400, 410 (S.D.N.Y. 2025) ("[P]aragraph (l) sets forth a unified set of procedures for the revocation of removal."); *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1252 (S.D. Fla. 2025).

In this case, where there are no allegations that Petitioner violated any conditions of his release, § 241.4(l)(2) applies. Thus, the Court turns to considering whether the procedures required by § 241.4(l)(2) have been followed.

The Court begins with the notice requirement. "The undisputed purpose of this requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 324 (E.D.N.Y. 2025). Based on this purpose, the Notice of Revocation of Release was plainly insufficient. Petitioner was informed that revocation was based on a review of his file, his personal interview, and bedspace availability. ECF No. [4-10]. No individualized information is given in the Notice, nor do Respondents provide any information as to the reasoning for the revocation in response to the Petition. Petitioner's file

and personal interview had remained unchanged since he was initially released a decade prior; neither of these represented new information. Indeed, ICE points to nothing that occurred between Petitioner's initial release and his re-detention that would indicate a change in circumstances. *See* ECF No. [4-4]. And a reference to "bedspace availability," without more, is insufficient to allow Petitioner to meaningfully respond to or otherwise contest the reasons for revocation. Thus, the Court finds the notice of revocation in this case insufficient to satisfy § 241.4.

Next, the Court turns to the informal interview requirement. The "opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1255 (S.D. Fla. 2025). Again, the Court finds the purported informal interview insufficient.

As Petitioner points out, the purported interview occurred on June 25, 2026, which is "more than four months after re-detention." ECF No. [7] ¶ 27. Moreover, Petitioner disputes that this "event" was an interview at all, as the officers did not tell Petitioner they were reviewing his custody and did not offer him an opportunity to provide a statement about his custody, revocation, or release. *Id.* ¶ 28. According to Petitioner, the officers "simply brough English-language papers concerning removal to Mexico and asked him to sign them without explanation." *Id*. The Government's Declaration asserts that Petitioner was "provided with an informal interview to address the reasons for revocation, but did not provide any statements," ECF No. [4-4] ¶ 20, but this Declaration was "based on [a] review of [Petitioner's] administrative file and the information in ICE's electronic databases," not any personal knowledge. *Id.* ¶ 3.

Based on the information before it, the Court finds that what occurred is not properly construed as an interview during which Petitioner was able to "respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(1)(1). At most, the Court is left with the

understanding that *some* interaction occurred on June 25, 2026, but not that this interaction constituted a meaningful interview. Moreover, the Court is concerned by the undisputed fact that the purported informal occurred more than four months after Petitioner's re-detention. This is plainly not "prompt," as the applicable regulation contemplates. *Id*.

The question, then, is whether the lack of sufficient notice and interview render Petitioner's detention unlawful, such that release is the appropriate remedy. Among courts that have confronted similar issues, the majority hold that the failure to provide adequate notice upon revocation of an order of supervision is grounds for release. *See, e.g.*, *Losada Diaz v. Parra*, No. 25-22624-CV, 2026 WL 1223375, at *5 (S.D. Fla. Jan. 25, 2026); *La Rosa Hernandez v. Parra*, No. 26-21701-CIV, 2026 WL 1221818, at *6 (S.D. Fla. Apr. 2, 2026); *Lugones v. Parra*, No. 26-21615-CIV, 2026 WL 1223378, at *6 (S.D. Fla. Mar. 30, 2026).

Similarly, most courts find that a substantial delay in affording an informal interview means that the re-detention violates ICE's regulations and the petitioner's constitutional rights to due process, thus warranting release. *See, e.g.*, *Banega v. Warden of Soft Side S. Facility*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *3 (M.D. Fla. Jan. 29, 2026); *Cabrera v. Warden Alcatraz*, No. 2:26-CV-01384-SPC-NPM, 2026 WL 1336255, at *1 (M.D. Fla. May 14, 2026); *Jean-Baptiste v. Mullin*, No. 3:26-CV-484-MMH-LLL, 2026 WL 1109483, at *2 (M.D. Fla. Apr. 24, 2026); *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111 JES DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025).

The Court agrees with the reasoning in those cases. Where ICE fails to follow its own regulations in re-detaining a petitioner—the very regulations designed to protect the petitioner's due process rights—the petitioner is entitled to release, just as much as the petitioner would be if

his due process rights were violated in any other manner. *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1165 (S.D. Cal. 2025) ("ICE's failure to follow such regulations thereby also violated Petitioner's constitutional due process rights.").[4]

Ultimately, the Court finds that the Government was not entitled to detain Petitioner without offering him an actual account of its reasons for doing so and a meaningful opportunity to contest those reasons. Indeed, "if men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Court thus finds that Petitioner must be released from custody.[5]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUGED** as follows:

1. The Petition, **ECF No. [1]**, is **GRANTED.**
2. Respondents are directed to immediately release Petitioner pursuant to the terms of his prior Order of Supervision.
3. Respondents shall certify compliance with this Order on or before **August 28, 2026**.
4. The Clerk of Court shall **CLOSE** this case.

[4] The Court, however, is not compelled by Petitioner's argument regarding the unclear signature on his Notice of Revocation of Release. ECF No. [7] ¶ 31. The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir.2008) (citation omitted). That a signature is unclear does not mean Petitioner has shown it to be improper. Thus, Petitioner's argument that the "unclear signature" on his Notice of Revocation of Release represents a violation of ICE procedures is without merit.

[5] Because the Court finds release warranted on the basis of Ground III, it does not reach any standalone due process arguments in Ground IV.

5. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in the Chambers at Miami, Florida on August 21, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record